[S. F. No. 3949.  Department One.—January 7, 1907.]

JOHN A. BANZHAF et al., Respondents, v. EDWARD C. CHASE, Appellant.

INJUNCTION—FRAUDULENT DIVERSION OF BAKERS' BUSINESS—DAMAGE. —Plaintiffs, whose bakery had been known as the "Old Homestead Bakery," and whose bread was stamped with the words "Old Homestead," the word "Old" being stamped above the word "Homestead," may enjoin the fraudulent diversion of their business by the defendant, who offered for sale bread stamped "New Homestead," of the same size and stamped in the same style as the loaves of the plaintiffs, with the fraudulent intent to injure and

divert the business of plaintiffs, and to deceive and mislead their previous purchasers and customers, and which had that effect, to plaintiffs' damage, for which judgment was given.

ID.—GIST OF ACTION—TRADEMARK NOT INVOLVED—FRAUDULENT APPROPRIATION OF TRADE.—The plaintiffs' right to recover in the action does not depend upon plaintiffs' right to the exclusive use of the words in question. The gist of the action is not the appropriation and use of another's trademark, but is based upon the fraudulent injury to and appropriation of another's trade.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Riordan & Lande, and James P. Sweeney, for Appellant.

Alexander & Church, for Respondents.

SHAW, J.—The plaintiffs were engaged in the business of baking and selling bread in the city of San Francisco. Their bakery had become known as the "Old Homestead Bakery," and they had been for a long time making and selling a certain kind of bread which they had designated as "Old Homestead" bread, which had become well known by that name and had acquired a reputation for its good quality, and by reason thereof it had an extensive sale in the city and county of San Francisco. The name "Old Homestead" was stamped upon each loaf of bread, the word "Old" being placed immediately over the word "Homestead." Because of its reputation under the designation aforesaid, the plaintiffs had enjoyed a good trade in this bread, and it had been a source of great profit to them.

The defendant, with the intent to injure and destroy the business of the plaintiffs, and to deceive the public and the buyers and consumers of plaintiffs' "Old Homestead" bread and to injure and defraud the plaintiffs, prepared and offered for sale an article of bread in loaves of a size similar to those of the plaintiffs, marked with the words "New Homestead," stamped into the loaves, with letters and words of the same style and size, and arranged in the same manner as the words "Old Homestead," in the loaves of bread made by the

plaintiffs. This bread was put upon the market by the defendant, and was of a character to deceive the buyers of bread and did mislead the previous purchasers and consumers of bread of plaintiffs' manufacture and induced them to buy that of the defendant instead of the plaintiffs, whereby the plaintiffs lost their trade and were damaged in an amount which the court below found to be $765.

This action was begun to enjoin the defendant from making bread in imitation of the plaintiffs' bread and marking the same with the name "New Homestead," or "Homestead," or in any manner using the said words in connection with the sale of said bread to induce customers to buy the same, or from using any simulation of the plaintiffs' trademark aforesaid. The cause was tried by the court, findings were made in accordance with the allegations of the complaint, and judgment rendered accordingly. The defendant appeals from the judgment and from an order denying his motion for a new trial.

The contention of the defendant is that the words "Old Homestead" are merely descriptive of the kind and quality of the bread; that they are an affirmation that the bread "is like that made in the old homestead of childhood's recollection," and that it is equally pure and simple as home-made bread; that they do not indicate origin or ownership; and hence, that any person is at liberty to use them, and that they cannot be adopted as a trademark and the right to their use acquired as the property of any person.

The words "Old Homestead," or "Homestead," may, and perhaps do, suggest that the bread on which they appear is asserted to be similar to that made in the ordinary old homestead. Whether this would indicate to any person that it is good bread or bad bread would depend on the recollections or knowledge of the particular person concerning the kind of bread made in the homestead of his experience, whether it was that of his childhood or of his adult years. But we may concede that the words are descriptive in character and relate to quality, and hence that, under section 991 of the Civil Code, they cannot be appropriated by any person as his own, so as to give him a right to prevent their use by another to his injury, regardless of the motives or purposes of the other in so using them.

The case of the plaintiffs does not depend on their right to the exclusive use of the words in question. It is based on fraud. It rests on the right of the plaintiffs to restrain the conduct of the defendant whereby he, in order to injure the plaintiffs and benefit himself, simulates the plaintiffs' goods, deceives the plaintiffs' patrons into the belief that his bread is that made by the plaintiffs, and thereby induces them to buy his own bread instead of the plaintiffs', thus, by fraud and deception, depriving the plaintiffs of the profits of such sales and appropriating the same to his own use. The right to prevent such an injury by injunction does not depend on the ownership by the plaintiffs of any particular word, phrase, or device, as a trademark. If the words in question constituted a trademark of the plaintiffs, as defined by law, and the defendant was using it to plaintiffs' injury, he would be restrained, although he were in entire ignorance of plaintiffs' prior use or right, and were using it in good faith, with good motives, with no intent to injure any person and no consciousness of such injury. But where one purposely imitates the goods, signs, or place of business of another, in order, by deceiving the other's patrons, to sell his own goods as the goods of the other, and thereby obtain for himself the profits which would otherwise go to the other, it is not necessary that the devices, words, or signs which are imitated shall constitute a trademark. The right of action in such a case arises from the fraudulent purpose and conduct of the defendant and the injury caused to the plaintiffs thereby, and it exists independently of the law regulating trademarks or of the ownership of such trademark by the plaintiffs. The gist of such an action is not the appropriation and use of another's trademark, but the fraudulent injury to, and appropriation of, another's trade.

This is well illustrated by the case of *Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529, [50 Am. St. Rep. 57, 42 Pac 142]. The plaintiff in that case was a corporation, and was engaged in business in a store upon which it had placed conspicuously the sign "Mechanical Store," which words were probably more descriptive of character and quality than the words "Old Homestead" in the case at bar. It had constructed the building in which it conducted the business in a peculiarly conspicuous style of architecture, and in that build-

ing and under that sign it had, for a long time, conducted the business, had acquired a wide reputation, and by honest dealing had obtained an extensive and profitable custom and valuable good-will. The defendant, for the fraudulent purpose of deceiving the public and the patrons of the plaintiff and appropriating to his own use the plaintiff's trade and profits, erected a building alongside that of plaintiffs, in the same style of architecture, so as to make it appear as a part of the plaintiff's store. He did not put up any sign whatever. In this adjoining building he kept for sale the same kind of goods as those dealt in by the plaintiff, and he did by these appearances deceive the public and prior patrons of the plaintiff, obtained their trade, and injured the plaintiff's business. It was held that this constituted an actionable wrong, regardless of the law of trademarks, or the imitation or use of any words which the plaintiff might claim as a trademark, and that an injunction was properly granted to prevent its further continuance. The case of *Dodge Stationery Co.* v. *Dodge,* 145 Cal. 380, [78 Pac. 879], was of the same character and was decided upon the same principle.

The plaintiffs' case is, in its legal aspect, in all respects similar. It was said in the Weinstock case: "The fundamental principle underlying this entire branch of the law is, that no man has the right to sell his goods as the goods of a rival trader. . . . Upon what principle of law can a court of equity say, if you cheat and defraud your competitor in business by taking his name, the court will give relief against you, but if you cheat and defraud him by assuming a disguise of a different character your acts are beyond the law? Equity will not concern itself about the means by which fraud is done. It is the results arising from the means, it is the fraud itself, with which it deals. The foregoing principles of law do not apply alone to the protection of parties having trademarks and trade names. They reach away beyond that, and apply to all cases where fraud is practiced by one in securing the trade of a rival dealer; and these ways are as many and as various as the ingenuity of the dishonest schemer can invent." The same reasons apply with equal force to the case at bar and demonstrate conclusively that the plaintiffs are entitled to their injunction without regard to their ownership of any name as a trademark, and without inquiry into the

question raised by the defendant, whether or not the plaintiffs' name was properly registered as a trademark, or whether or not that registration was prior to the registration of the defendant.

In view of these conclusions it is unnecessary to notice further the other points raised.

The judgment and order are affirmed.

Sloss, J., and Angellotti, J., concurred.