[Civ. No. 9983. First Appellate District, Division Two.—December 10, 1935.]

I. ROKEACH & SONS, INC. (a Corporation), Appellant, v. S. KUBETZ, Respondent.

Elias Mansfield, Gibson, Dunn & Crutcher, Ira C. Powers and Arthur E. Pennekamp for Appellant.

Edwin W. Taylor, Stanley Howell, Irwin H. Roth and John H. Gordon for Respondent.

STURTEVANT, J.—In an action brought to obtain an injunction the trial court made findings in favor of the defendant and from the judgment entered thereon the plaintiff has appealed.

The plaintiff framed its complaint in two counts. In the first count it alleged a cause of action for wrongful infringement of certain trademarks. In its second cause of action it alleged facts showing unfair competition. In view of the conclusions we have reached regarding the second count we do not deem it necessary to discuss the contentions made under the first count.

Commencing as early as 1884 the plaintiff, or its predecessors in interest, engaged in manufacturing and selling certain articles to the Jewish trade. It commenced doing business at Kovno, Lithuania, and later transferred its business to New York, where it continued to manufacture and sell. From time to time it commenced the manufacture and sale of different articles. At the time this action was commenced, September 19, 1932, the plaintiff was continuing its manufacture in the state of New York and selling in interstate commerce and particularly in the city of Los Angeles. Among other things it was so engaged in the manufacture of a cooking fat and also of a line of soaps. In about the year 1925 the defendant accepted employment by the plaintiff and acted as a general mechanic in its factory down to the year 1931. At about that time the defendant stopped working for the plaintiff, moved to Los Angeles, and there he commenced to manufacture and sell a cooking fat and a line of soaps. The issues presented in this case involve his method of vending those articles.

■ The record discloses that both parties prepared and packed in glass jars their cooking fats. The jars are identical in size. On each jar there is a label. It was the contention of the plaintiff that the defendant adopted and used a label that was so closely similar to the label used by the plaintiff as to work a fraud on the latter. The two labels are almost exactly the same size. The plaintiff's label has circular sides which are truncated. The defendant's label is of the same identical shape except that it has four ears as though a square were superimposed on a circle in such a position that the four corners would slightly project. From the top of the label to a point slightly below the middle of it appears a design which may be said to be the body of the label. In the center appears a six-pointed star. In the middle of the star appear Hebraic characters spelling the word ''Kosher'' which means ''to prepare in conformity with Jewish laws as meat''. Except as we have indicated, all lines and all dimensions are exactly the same. On plaintiff's label its name written in Yiddish characters appears at the very top. The characters are in white located in a blue background. Immediately below the star are Yiddish characters spelling the word ''Nyafat''. Those characters are white in a blue background. On the top of defendant's label appears the defendant's name written in Hebraic characters. The letters are white resting in a red background. Immediately below the star appears in Yiddish ''Nufat''. ''Nufat'' means the same as ''Nyafat''. The letters are white in a red background. The star on the defendant's label has a blue background, whereas the star on the plaintiff's label has a red background. Printed matter in the Yiddish language appears at the right and also at the left of the star on each label. On the plaintiff's label that printing is in blue; on the defendant's label it is in red. The expressions translated are identical. Below the design so described, in Yiddish appears, ''It can be used for milk and not for meat''. Still lower down on the plaintiff's label appears its name and address which is printed in blue. In the same position on the defendant's label appears his name and address printed in red. To one who can neither read nor write Yiddish or Hebrew, all words and letters except the name of the manufacturer appear to be nothing but lines and dots. Each label is bordered by a broad line of gold. Each label is divided

into three subdivisions, each of which is bounded by lines of gold. The name of the manufacturer written in Hebraic characters appears at the very top of each label, in a space of considerable size; and being a rectangular crescent in form. The word "Nyafat" and "Nufat" appear written across the middle of the label in a rectangle the ends of which are bent backwards. The words last mentioned are the prominent expressions on both labels. The star on each label is constructed by so imposing one isosceles triangle upon another as to make six sharp points. Each of these divisions is bounded by gold. As one looks at the two jars, sitting side by side, the very first impression is that they are the labels of one manufacturer varying in color only. Certain purchasers entertained the same views and were imposed upon in making their purchases. That evidence was not controverted. Some other purchasers did not make the same error, but such fact in no way controverted the testimony of those who were imposed upon.

In general form, size, design, wording, meaning, use and combination of expressions, the two labels are identical except that the shades of red and blue, which are the same as the shades on the other, do not always appear in the same places and the names of the respective manufacturers are different. It is settled law that the variation in the use of the identical colors is not controlling. (*Schmidt* v. *Brieg,* 100 Cal. 672, 681 [35 Pac. 623, 22 L. R. A. 790].) The difference between the names of the manufacturers and their addresses is buried by other features in the design.

As to the soap the case is not so clear, but nevertheless we think it fully sustained the allegations of the plaintiff. The cakes of soap are rectangular, about twice as long as wide. Each cake is so made that a rim extends entirely around the cake. The rim is perhaps twice as thick as the inside of the cake. The substance of each cake is so made that colored material is stamped through each cake. That colored material is so stamped as to make three Hebraic characters spelling the word "Kosher". The plaintiff used red as a coloring material; the defendant sometimes used red and sometimes used blue. The lines of the letters spelling "Kosher" may be seen forty or fifty feet away. On one side of a cake of soap made by the plaintiff appears its name and the words "Kosher Soap". In letters identical, the same size, on a

cake of soap made by the defendant appears his name and the words "Kosher Soap". The prominence of the Hebraic letters throws into shade the English letters and, if one does not have his attention specially called to the matter he assumes the two cakes of soap are the product of the individual who uses the scrolls which the Hebraic letters appear to be. That the customers using ordinary care were imposed upon in purchasing cakes of soap was the uncontradicted evidence in the case.

From what we have said we think it is clear that all findings should have been made in favor of the plaintiff as its proof was complete. (*Banzhaf* v. *Chase*, 150 Cal. 180 [88 Pac. 704], and cases there cited.) The defendant cites *Southern Cal. F. Co.* v. *White Star C. Co.*, 45 Cal. App. 426 [187 Pac. 981]. But in that case the facts were quite different. On page 428 the court said: "Except that both labels have substantially the same blue-colored background, the figure of a fish, designated (designed) to represent the 'tuna', and truthful, printed descriptions of the contents of the packages, the labels of the two competitors differ in almost every respect." They also cite and rely on *American Automobile Assn.* v. *American Automobile O. Assn.*, 216 Cal. 125 [13 Pac. (2d) 707, 83 A. L. R. 699]. That was a contest between two rival organizations seeking members. In no way did it involve packages of merchandise with labels attached thereto.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.